UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE VANGUARD NATURAL RESOURCES          No. 16-cv-1578 (PKC)
BONDHOLDER LITIGATION

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**GRANT & EISENHOFER P.A.**        **GARDY & NOTIS, LLP**
Jay W. Eisenhofer                   Mark C. Gardy
Gordon Z. Novod                  James S. Notis
485 Lexington Avenue, 29th Floor    Meagan Farmer
New York, New York 10017        Tower 56
Tel:  646-722-8500               126 East 56th Street, 8th Floor
Fax:  646-722-8501             New York, New York 10022
                                    Tel:  212-905-0509
                                    Fax:  212-905-0508

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 7

I.     LEGAL STANDARD ................................................................................................ 7

II.    PLAINTIFFS HAVE PROPERLY ALLEGED INJURY RESULTING FROM THE EXCHANGE OFFER ................................................................................. 8

III.   DEFENDANTS VIOLATED TIA SECTION 316(B) AND SECTION 7.07 OF THE FIRST SUPPLEMENTAL INDENTURE ...................................................... 12

    A.  The TIA Was Implemented to Protect Holders' Unconditional Rights to Receive Payment of Principal and Interest .................................................... 13

    B.  The TIA Protects Holders' Payment Rights that Have Been Impaired or Affected by an Issuer's Out-of-Court Debt Restructuring Activities ................ 13

    C.  Plaintiffs Have Properly Pleaded a TIA Claim ................................................. 14

IV.   THE NO-ACTION CLAUSE DOES NOT BAR PLAINTIFFS' CLAIMS ........... 17

V.    PLAINTIFFS HAVE PLEADED A BREACH OF CONTRACT CLAIM ........... 20

    A.  Defendants Breached Section 7.07 by Consummating the Exchange Offer ..... 20

    B.  Defendants Breached Section 5.12 by Consummating the Exchange Offer ..... 20

VI.   THE COMPLAINT STATES A CLAIM FOR VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ...................................... 22

VII.   THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT ........... 23

VIII. THE COMPLAINT STATES A DECLARATORY JUDGMENT CLAIM THAT IS NOT DUPLICATIVE OF PLAINTIFFS' OTHER CLAIMS ................. 24

CONCLUSION ..................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*,
   2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012) ........................................................... 8

*Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*,
   677 F.3d 1286 (11th Cir. 2012) ............................................................................. 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 7

*Bank of N.Y. Mellon v. Realogy Corp.*,
   979 A.2d 1113 (Del. Ch. 2008) ............................................................................. 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 7

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
   85 F.3d 970 (2d Cir. 1996) ............................................................................. 12, 13

*BOKF, N.A. v. Caesars Entm't Corp.*,
   Nos. 15-cv-1561 (SAS), 15-CV-4634 (SAS),
   2015 WL 5076785 (S.D.N.Y. Aug. 27, 2015) ..................................... 13, 14, 15, 17

*Chase Manhattan Bank, N.A. v. Keystone Distribs.*,
   873 F. Supp. 808 (S.D.N.Y. 1994) ........................................................................ 22

*Cont'l Cas. Co. v. State of N.Y. Mortg. Agency*,
   1998 WL 513054 (S.D.N.Y. Aug. 18, 1998) .......................................................... 18

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992) .................................................................................. 18

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ............................................................................................ 22

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011) .................................................................................... 20

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
   241 F.3d 154 (2d Cir. 2001) .................................................................................. 24

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ................................................................... 19

*Fantozzi v. Axsys Techs., Inc.,*
   No. 07-cv-02667, 2008 WL 4866054 (S.D.N.Y. Nov.6, 2008)................................. 23

*Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.,*
   No. 99-cv-10517, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999)..................................... 13, 14, 15

*Fleisher v. Phoenix Life Ins. Co.,*
   858 F. Supp. 2d 290 (S.D.N.Y. 2012)..................................................................... 25

*Goldman v. Simon Prop. Grp., Inc.,*
   58 A.D.3d 208 (2d Dept. 2008) ............................................................................ 24

*GSO Coastline Credit Partners LP v. Global A&T Elecs. Ltd.,*
   30 N.Y.S.3d 109 (N.Y. Sup. 2016) ....................................................................... 25

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.,*
   381 F. Supp. 2d 192 (S.D.N.Y. 2004).................................................................... 11

*In re Lehman Bros. Holdings Inc.,*
   469 B.R. 415 (Bankr. S.D.N.Y. 2012) ................................................................... 16

*Kaye v. Grossman,*
   202 F.3d 611 (2d Cir. 2000).................................................................................. 23

*Kidder, Peabody & Co. v. Maxus Energy Corp.,*
   925 F.2d 556 (2d Cir. 1990).................................................................................. 12

*Kramer v. Lockwood Pension Servs.,*
   653 F. Supp. 2d 354 (S.D.N.Y. 2009).................................................................... 24

*Landmark Ventures, Inc. v. Wave Sys. Corp.,*
   No. 12-cv-3634, 2013 WL 909184 (2d Cir. Mar. 12, 2013).................................... 20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).......................................................................................... 8, 10

*Magten Asset Mgmt. Corp. v. Northwestern Corp.,*
   313 B.R. 595 (Bankr. D. Del. 2004) ...................................................................... 14

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.,*
   111 F. Supp. 3d 542 (S.D.N.Y. 2015)........................................................ 13, 14, 15, 19

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.,*
   75 F. Supp. 3d 592 (S.D.N.Y. 2014)........................................................... 2, 13, 14

*Medinol Ltd. v. Boston Sci. Corp.*,
   346 F. Supp. 2d 575 (S.D.N.Y. 2004)........................................................................ 8

*MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*,
   80 F. Supp. 3d 507 (S.D.N.Y. 2015)................................................................. passim

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)..................................................................................... 9

*Oaktree Capital Mgmt., LLC v. Spectrasite Holdings, Inc.*,
   No. 02-cv-548 (JJF), 2002 WL 32173072 (D. Del. June 25, 2002) ................... 15, 16

*Okla. Police Pension and Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
   291 F.R.D. 47 (S.D.N.Y. 2013) ...................................................................... 2, 8, 11

*Penn. Mut. Life Ins. Co. v. Wolk*,
   739 F. Supp. 2d 387 (S.D.N.Y. 2010)...................................................................... 25

*Permanent Mission of India to the U.N. v. City of N.Y.*,
   551 U.S. 193 (2007)................................................................................................ 16

*Pesa v. Yoma Dev. Grp., Inc.*,
   18 N.Y.3d 527 (2012) ............................................................................................. 11

*Policeman's Annuity & Benefit Fund of City of Chi. v. Bank of America, NA*,
   904 F. Supp. 2d 536 (S.D.N.Y. 2012)...................................................................... 10

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   23 N.Y.3d 549 (2014) ............................................................................................. 17

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
   757 F.3d 79 (2d Cir. 2014)...................................................................................... 10

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015)........................................................................ 9

*SC Note Acquisitions* and *Scanlan. SC Note Acquisitions, LLC v. Wells Fargo Bank*,
   *N.A.*, 934 F. Supp. 2d 516 (E.D.N.Y. 2013) ........................................................... 10

*Scanlan v. Kodak Ret. Income Plan*,
   678 F. Supp. 2d 110 (W.D.N.Y. 2010)..................................................................... 10

*SEC v. Apuzzo*,
   689 F.3d 204 (2d Cir. 2012)...................................................................................... 7

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013)............................................................................................... 7

*Whitebox Convertible Arbitrage Partners, L.P. v. World Airways, Inc.*,
   No. 04-cv-1350, 2006 WL 358270 (N.D. Ga. Feb. 15, 2006) .................................................... 3

*YRC Worldwide, Inc. v. Deutsche Bank Trust Co. Americas*,
   No. 10-cv-2106, 2010 WL 2680336 (D. Kansas July 1, 2010) ............................................... 14

## Statutes

11 U.S.C. §§ 544, 547, 548 and 550 ....................................................................................... 9, 16

11 U.S.C. §101(54) .................................................................................................................. 16

28 U.S.C. § 2201(a) ................................................................................................................. 24

N.Y. Debt. & Cred. Law § 270 (McKinney 2016) ...................................................................... 17

Trust Indenture Act of 1939, 15 U.S.C. §77aaa, Section 316(b)............................................ passim

## Rules

17 C.F.R. §230.144A  ................................................................................................................ 4

Fed. R. Civ. P. 8....................................................................................................................... 2, 7, 19

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 25

## PRELIMINARY STATEMENT

Plaintiffs Gregory Maniatis, William Rowland and Lawrence Culp ("**Plaintiffs**") are the beneficial holders of unsecured 7.875% Senior Notes due 2020 ("**2020 Notes**") issued by Vanguard Natural Resources, LLC ("**Vanguard**") and VNR Finance Corp. ("**VFC**" and, together with Vanguard and the Guarantor Defendants, the "**Defendants**"). Defendants violated the Trust Indenture Act of 1939, 15 U.S.C. §77aaa, et seq. ("**TIA**"), and the indentures governing the 2020 Notes when it conducted a debt restructure and offered only a select group of its existing 2020 Noteholders the opportunity to exchange and replace existing unsecured notes with new secured notes (the "**2023 Notes**"). This January 8, 2016 exchange offer ("**Exchange Offer**") benefited large institutions who qualified under U.S. securities laws as Qualified Institutional Buyers, or "QIBs," and penalized smaller investors like Plaintiffs and other non-QIBs. Because Plaintiffs were not offered the opportunity to participate in the Exchange Offer, and trade their existing unsecured debt for secured debt, Plaintiffs and other non-QIBs were left with unsecured notes (i.e., notes subordinate to the 2023 Notes) that had a diminished value and diminished trading market.

The Exchange Offer occurred when Vanguard was experiencing financial distress as a result of precipitous declines in commodity prices. The Exchange Offer adversely affected the 2020 Notes because the holders of the new 2023 Notes have valuable and superior rights over the 2020 Notes with respect to payment following the Exchange Offer. The Exchange Offer was an impermissible out-of-court debt restructuring that has impaired or affected Plaintiffs' ability to recover principal and interest and to institute suit in pursuit thereof, in violation of the TIA and the terms of the governing indentures.

Plaintiffs' detailed allegations satisfy Fed. R. Civ. P. 8 and put Defendants on notice of the claims asserted against them and the basis for the relief sought. Nothing more is required. The various arguments and contentions advanced by Defendants in their motion do not support dismissal. First, Defendants attempt to obfuscate the pleading requirements by asserting that Plaintiffs have not suffered an injury in fact and lack standing. The Complaint, however, is replete with allegations that Plaintiffs' ability to recover payment of principal and interest, and to institute suits in pursuit thereof, has been affected or impaired because Vanguard's financial troubles have affected its ability to repay the 2020 Notes. ¶¶20, 21, 84-86.[1] The Complaint plainly states the harmful result of the Exchange Offer – the 2020 Notes are now effectively subordinate to the 2023 Notes. ¶¶9, 54, 101, 103. The Complaint alleges that since the 2023 Notes have primed[2] the 2020 Notes with respect to the assets pledged as security for the 2023 Notes, and to the assets of the guarantors, the 2020 Notes have diminished in value. ¶¶13, 149. These allegations are sufficient to demonstrate clear injury. *See, e.g., Okla. Police Pension and Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 71 (S.D.N.Y. 2013) (plaintiff's allegations that breaches of the agreement caused mortgage loans to diminish in value, which resulted in damages to plaintiff, "raise issues of fact that cannot be resolved on a motion to dismiss").

Second, several decisions from this Court have rejected motions to dismiss similar TIA Section 316(b) claims where a corporation favors one group over another in debt restructuring efforts even absent any default event. *See, e.g., Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 613 (S.D.N.Y. 2014); *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, 80 F. Supp. 3d 507, 515 (S.D.N.Y. 2015).

---

[1] Citations to "¶ _" refer to Plaintiffs' Consolidated Second Amended Class Action Complaint. ECF 37.

[2] "Primed" is defined by Investopedia as "[t]he act of granting a new lender a higher claims priority over a current secured debt holder. A lender is considered primed when they are surpassed on the priority ladder for a borrower's assets." http://www.investopedia.com/terms/p/primed.asp.

Third, courts have also rejected Defendants' "no action clause" defense where, as here, Plaintiffs seek to enforce a right to payment of principal and interest. *See MeehanCombs*, 80 F. Supp. 3d at 517 (rejecting assertion that the no action clause barred state law claims to enforce a right to payment of principal and interest). The nature of Plaintiffs' claims excuses compliance with the no-action clause. *See Whitebox Convertible Arbitrage Partners, L.P. v. World Airways, Inc.*, No. 04-cv-1350, 2006 WL 358270, at *3 (N.D. Ga. Feb. 15, 2006) (applying New York law, excusing compliance with no-action clause in suit asserting contract and good faith and fair dealing claims against issuer whose actions treated bondholders "significantly differently," noting under these facts, "[e]nforcing the no-action clause in the instant case would not serve the purposes for which it was placed in the indenture").

Fourth, Defendants' contention that Plaintiffs have not identified a term of the contract that was breached is belied by the Complaint's express breach of contract allegations. ¶¶105-138. Plaintiffs' allegations demonstrate that Plaintiffs were only deprived of the benefit of their bargain when Vanguard failed to treat all holders of the 2020 Notes equally irrespective of whether such holders were QIBs or non-QIBs, but also that Defendants breached the Indenture by consummating the Exchange Offer.

Finally, Defendants assert that Plaintiffs' breach of contract, unjust enrichment and declaratory judgment claims should be dismissed as duplicative of the TIA claim. But numerous courts in this District have rejected similar challenges at the pleadings stage. *See, e.g., MeehanCombs*, 80 F. Supp. 3d at 520 (upholding breach of contract claim and TIA claim). These properly pleaded claims stand on their own, and may also be pleaded in the alternative.

## OVERVIEW OF RELEVANT FACTS AND PROVISIONS OF THE
## 2020 NOTES INDENTURES AND THE TRUST INDENTURE ACT

This is a class action brought by Plaintiffs, individually and on behalf of all persons who beneficially held Vanguard's 2020 Notes from February 10, 2016 to the present. ¶1. The 2020 Notes are, and were at all relevant times, registered securities under the Securities Act of 1933. *Id*. The 2020 Notes are senior unsecured obligations of Vanguard and VNR, which rank equally in right of payment with all of Vanguard's then existing and future senior unsecured debt, and which are unconditionally guaranteed by all of Vanguard's subsidiaries (other than VFC since VFC issued the 2020 Notes). *Id*.

Like many energy companies, Vanguard has faced severe challenges from falling oil and gas prices, threatening Vanguard's ability to repay its debt obligations. ¶¶2, 48. In 2015, Vanguard recognized over $1 billion in impairment charges of its oil and natural gas properties as a result of declining energy prices, significantly reduced its distribution to unitholders (¶49), and suffered downgrades in its corporate family rating and on the 2020 Notes. ¶50.

Vanguard attempted to alleviate its debt crisis when, on January 8, 2016, it announced the Exchange Offer . ¶¶2, 52. But Vanguard and VFC did not offer the opportunity to exchange to all holders of the 2020 Notes. ¶¶3, 53. Rather, they only offered the deal to qualified institutional buyers ("**QIBs**"), as defined in Rule 144 of the Securities Act. *Id*. The 2023 Notes were issued under exemptions from the registration requirements of the Securities Act (Rule 144A and Regulation S of the Securities Act), even though the 2020 Notes were registered securities. ¶¶3, 53. QIBs were solicited to participate in the Exchange Offer and provided with a private offering memorandum that disclosed Vanguard's views on the risks to the 2020 Notes if QIBs did not agree to the Exchange Offer. ¶¶54. For example, Vanguard and VNR disclosed to the QIBs that:

***The Exchange Offer is expected to result in reduced liquidity for the [2020] Notes that are not exchanged which may limit the marketability of the [2020] Notes and adversely affect the market price of the [2020] Notes.***

The trading market for [2020] Notes not exchanged in the Exchange Offer could become more limited than the existing trading market for the [2020] Notes and could cease to exist altogether due to the reduction in the principal amount of the [2020] Notes outstanding upon consummation of the Exchange Offer. A more limited trading market might adversely affect the liquidity and trading price of the [2020] Notes. If a market for [2020] Notes not exchanged in the Exchange Offer exists or develops, the [2020] Notes may trade at a discount to the price at which they would trade if the principal amount outstanding were not reduced. There can be no assurance that an active market in the [2020] Notes will exist, develop or be maintained, or as to the prices at which the [2020] Notes may trade, whether or not the Exchange Offer is consummated.

¶5. Defendants did not provide Plaintiffs and other non-QIBs with a copy the private offering memorandum, nor did Defendants disclose the likely dire consequences as a result of the Exchange Offer – loss of 2020 Notes' value and decreased market liquidity. *Id*.

The Exchange Offer created two classes of holders of 2020 Notes with very unequal rights not based on any specific term of the Indentures. ¶4. The Exchange Offer primed the 2020 Notes and caused them to become subordinate to the obligations evidenced by the 2023 Notes, which are unconditionally and irrevocably guaranteed by the Guarantor Defendants[3] and, thus are effectively senior to all existing unsecured senior indebtedness of those guarantors to the extent of the collateral. ¶9. As a result of the Exchange Offer, $168,170,000 in principal amount of 2020 Notes were exchanged for $75,634,000 of 2023 Notes. ¶2. Because the 2023 Notes have a second lien security interest in Vanguard and VNR's property (and the 2020 Notes do not), Plaintiffs' practical ability to recover payment of principal and interest and to institute suit in pursuit thereof has been affected or impaired. ¶¶9, 64, 101-103. This security interest is valuable in light of Defendants' financial condition, and provides 2023 Noteholders a superior position in an out-of-court restructuring or reorganization. ¶54.

---

[3] The term Guarantor Defendants is defined in ¶38.

The 2020 Notes were issued pursuant to an April 4, 2012 Indenture (the "**Base Indenture**") and First Supplemental Indenture, each by the Defendants, the Guarantors party thereto and U.S. Bank National Association, as trustee. *Id*. Section 7.07[4] provided as follows:

> Notwithstanding any other provision in this Indenture, *the right of any* **Holder of a Note to receive payment of principal of**, or premium or interest, if any, on the Note, on or after the respective due dates expressed in the Note (including in connection with any offer to purchase), or *to bring suit for the enforcement of any such payment* on or after such respective dates, *shall not be impaired or affected without the consent of such Holder*.

¶68 (Complaint, Ex. B, §7.07) (emphasis added). That section is mandated by TIA Section 316(b). TIA Section 316(b) provides in pertinent part

> *Notwithstanding any other provision of the indenture to be qualified*, *the right of any holder* of any indenture security *to receive payment of the principal of and interest on such indenture security*, on or after the respective due dates expressed in such indenture security, *or to institute suit for the enforcement of any such payment* on or after such respective dates, *shall not be impaired or affected without the consent of such holder* . . . .

15 U.S.C. § 77ppp(b) (emphasis added).

Defendants also violated the Indentures by exchanging old unsecured notes for secured notes without securing the remaining 2020 Notes with equal and ratable liens, violating Section 5.12. ¶120; Complaint, Ex. B, §5.12. Section 5.12 promised holders of the 2020 Notes that if Defendants were to create, or otherwise cause to suffer to exist any lien of any kind, other than "Permitted Liens," then the 2020 Notes would be secured with the same liens, on an equal and ratable basis. ¶83. The "New Liens" were not Permitted Liens under the Indentures, and did not fit within the limited exceptions under Section 5.09 (¶¶122-126) nor has Vanguard demonstrated that it complied with this section or Section 5.12 in effectuating the Exchange Offer.

---

[4] References to "Section __" herein shall be referenced to the Sections of the First Supplemental Indenture. References to the Section 316(b) of the Trust Indenture Act are referenced as "TIA Section 316(b)."

It was pervasive throughout the Indentures that holders of 2020 Notes were not to be treated differently, whether those holders were QIBs or non-QIBs. ¶¶71, 72, 73, 75. But the Exchange Offer was prejudicial to Plaintiffs and other non-QIBs in violation of the covenant of good faith and fair dealing, implied in every New York contract. ¶¶140-145. Neither the prejudicial conduct, nor the risks that the 2020 Notes would be subordinated to the eventual 2023 Notes could have been foreseen by Plaintiffs. ¶¶7, 145. For these reasons, Defendants' actions deprived Plaintiffs of the benefit of their bargain. ¶¶98, 100-102.

## ARGUMENT

## I.    LEGAL STANDARD

In considering a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012). A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). If a complaint subject to Fed. R. Civ. P. 8 contains sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Iqbal*, 556 U.S. at 678. Upon a motion to dismiss the court should not evaluate the merits of the allegations. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof . . . is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation omitted); *see also Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## II.    PLAINTIFFS HAVE PROPERLY ALLEGED INJURY RESULTING FROM THE EXCHANGE OFFER

To demonstrate constitutional standing, a plaintiff must establish: (1) an injury in fact; (2) that is fairly traceable to the defendant's unlawful conduct; and (3) that is likely redressable "by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The Complaint sets forth numerous allegations of harm Plaintiffs suffered as a result of the Exchange Offer. *See, e.g.*, ¶¶13, 65, 149. For example, Plaintiffs allege harm "as a direct and intentional result of the Exchange Offer … [because] the 2020 Notes … have been subordinated to the 2023 Notes with respect to assets of the Defendants to which the 2023 Notes have liens, reducing the value of the 2020 Notes and impairing the rights of Plaintiffs and other Class members under the Indentures to receive interest and principal." ¶149. These allegations sufficiently establish injury at the pleading stage. *See Okla. Police Pension and Ret. Sys.*, 291 F.R.D. at 71 (allegations that breaches of an agreement caused mortgage loans to diminish in value, which resulted in damages to plaintiff, "raised issues of fact that cannot be resolved on a motion to dismiss"); *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, No. 09-cv-01796, 2012 WL 3890128, at *11 (S.D.N.Y. Sept. 7, 2012) ("That damages are uncertain, or may not exist, is an insufficient reason to grant a motion to dismiss"); *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 601 (S.D.N.Y. 2004) ("Even if [plaintiff] cannot prove any damages . . . it may still maintain its claim for breach of contract").

Defendants assert that Plaintiffs' harms are "conjectural" and "hypothetical" because the harms are not imminent or actual, but merely possible. Defts' Br.[5] at 9. But Plaintiffs allegations of harm have been found by courts in this District to adequately establish injury, including: (i) that the 2020 Notes diminished in value as a result of the Exchange Offer, and (ii) that Plaintiffs'

---

[5] "Defts' Br." refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss. ECF 41.

debt is now subordinate to the 2023 Notes, which is injurious because (a) the potential for a further credit rating downgrade, and (b) Vanguard is financially distressed, more than adequately establish injury sufficient to confer standing.[6] *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 166 (2d Cir. 2012) (Article III injury existed where misconduct resulted in a decline in value of the security, a rating agency downgrade, and holders were exposed to increased risk as a result of the defendants' misconduct even where defendant did not file for bankruptcy); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F.Supp.3d 587, 612 (S.D.N.Y. 2015) (TIA damages properly pleaded by alleging diminution in value of plaintiffs' notes, not "actual damages," noting "[t]he method for measuring recoverable damages will be determined at a later date, as is customary in securities actions," and plaintiffs need not allege they sold their notes at a loss).

In *NECA-IBEW Health & Welfare Fund*, the Second Circuit held the plaintiff alleged a cognizable injury in a Section 11 of the Securities Act case based on allegations that the defendants' misconduct resulted in a "decline in value" of the security (mortgage-backed certificate), and that rating agencies "put negative watch labels on the Certificate[s] …. And downgraded previously assigned ratings" and that holders were exposed to increased risk as a result of the defendants' misconduct. 693 F.3d at 166. Much like here, the defendants in *NECA-IBEW* argued that the plaintiff suffered no loss where no missed payments were alleged. *Id*. at 166. The Second Circuit disagreed, noting that a fixed income investor need not have "miss[ed] an interest payment before his securities can be said to have declined in 'value.'" *Id*. The Court further noted that a heightened credit risk may suffice to establish injury. *Id*. at 167. Plaintiffs have alleged similar allegations of injury in this case (¶¶9, 50, 54, 64), and thus have Article III

---

[6] While Plaintiffs do not allege an imminent bankruptcy filing (without the benefit of discovery), they have alleged Vanguard is financially distressed, that Vanguard recognized well over a billion in impairment charges in the fourth quarter of 2014 and the third quarter of 2015, and the potential for a further credit rating downgrade. ¶¶50, 54, 64.

standing. *See Policeman's Annuity & Benefit Fund of City of Chi. v. Bank of America, NA*, 904 F. Supp. 2d 536, 546 (S.D.N.Y. 2012) (plaintiff "plausibly alleged Article III standing: (a) a diminution in value of the certificates it purchased (b) as a result of defendants' purported breaches of [the contract] that is (c) redressable through this breach of contract action as well as under various provisions of the [TIA]") (*citing Lujan*, 504 U.S. at 560-561).

Defendants argue that Plaintiffs' harms cannot be predicated on what rights may be impaired or affected in the event Vanguard files for bankruptcy,[7] relying on *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014). Defts' Br. at 8. In *Rajamin*, the plaintiffs' mortgages and loans had been assigned to four trusts, and the plaintiffs, not parties to those assignment agreements, claimed injury because they made payment to the defendants who were not the proper parties to receive the payments. *Id.* at 83, 85. But the *Rajamin* plaintiffs did not allege they ever paid more than they owed, nor did they allege they were ever asked to pay more than they owed. *Id.* at 85. For these reasons, the *Rajamin* court held that plaintiffs did not have standing to assert claims, particularly since they were not parties to the assignment contract and could not assert claims based on that contract. *Id.* at 88. Here, Plaintiffs are beneficial holders of the 2020 Notes who seek to enforce contractual and statutory rights for the bonds they own, and have alleged that the value of and market for their bonds have diminished as a result of the Exchange Offer. *See* ¶¶9, 105.[8]

---

[7] In *MeehanCombs*, the Court denied a motion to dismiss TIA and contract claims where plaintiffs' alleged similar harm – a future right to recover principal and interest on their notes was impaired or affected by the defendant's action. *See MeehanCombs*, 80 F. Supp. 3d at 516 (upholding TIA Section 316(b) and breach of contract claims, finding the transaction at issue left plaintiffs "with an empty right to assert a payment default from an insolvent issuer," even though issuer was not bankrupt and had not missed a payment under the governing indentures).

[8] Defendants fare no better relying on *SC Note Acquisitions LLC v. Wells Fargo Bank*, N.A., 934 F. Supp. 2d 516, 522 (E.D.N.Y. 2013) (allegations that trusts' acquisition of certain assets would destroy pass-through tax status did not establish injury where IRS did not – and may never have – determined that the trust lost the pass-through tax status) and *Scanlan v. Kodak Ret. Income Plan*, 678 F. Supp. 2d 110, 114 (W.D.N.Y. 2010) (no standing where complaint alleged only "potential tax consequences" and relied "upon an extended series of hypothetical events").

Defendants claim Plaintiffs' exclusion from the Exchange Offer is not an injury because Plaintiffs did not allege they would have accepted an offer had they been given the chance. Defts' Br. at 11 (citing *Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532 (2012)). But such an allegation is not required to assert a breach of contract claim. (*See* Section V, *infra*). *Pesa* considered whether a buyer alleging anticipatory breach must show that it was ready, willing and able to close when the seller had repudiated the real estate contract. *Id.* at 530. Here, Plaintiffs allege an actual breach of Sections 7.07 and 5.12 rather than a mere alleged anticipatory breach.

Defendants also claim that the Exchange Offer actually brought economic benefit, preventing the establishment of injury-in-fact, citing *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004). Defts' Br. at 11. In *AOL*, the plaintiffs' asserted claims under Section 11 and 12(a)(2) of the Securities Act against bond underwriters based on false statements in the offering documents. *Id.* at 246. The court held that the plaintiffs lacked standing because at the time the claims were asserted, the statutory damage remedies under Sections 11 and 12 were not available where the bonds were trading above the price at which they were offered. *Id.* Unlike here, the plaintiffs in *AOL* did not allege a violation of a contractual right, nor did they allege that the practical status of the bonds changed or that their bonds diminished in value.[9] These types of allegations establish an injury-in-fact at the pleading stage. *See Okla. Police Pension and Ret. Sys.*, 291 F.R.D. at 71 (allegations that breaches of the agreement caused mortgage loans to diminish in value, which resulted in damages to plaintiff, "raise issues of fact that cannot be resolved on a motion to dismiss").

Defendants in the Offering Memorandum specifically acknowledged the harm the Exchange Offer would cause to the 2020 Notes, disclosing that the Exchange Offer would

---

[9] Going beyond the facts in the Complaint, Defendants cite to current trading prices of the 2020 Notes to support their claim that the Exchange offer benefitted Plaintiffs. Defendants' argument, to the extent relevant, is a based on issues of fact, untested and without appropriate discovery.

negatively impact the liquidity, marketability and market price of the 2020 Notes. Defendants'

argument on this point discredits and contradicts prior disclosures to investors. ¶64. Defendants

acknowledge this specific harm in the Offering Memorandum:

> The unsecured nature of the claims of the [2020] Notes could materially and
> adversely affect the value of a holder's [2020] Notes that remain outstanding
> following the completion of the Exchange Offer and, in the event of a bankruptcy,
> liquidation or insolvency of us, the extent of such holder's recovery. … the [2020]
> Notes will be effectively subordinated to the [2023] Notes …. In the event of our
> bankruptcy, liquidation or insolvency, it is possible that our unpledged assets and
> assets remaining after such secured indebtedness has been satisfied will be
> insufficient to satisfy the claims of holders of [2020] Notes that remain
> outstanding following the completion of the Exchange Offer. ¶64.

Finally, Defendants do not challenge Plaintiffs' declaratory judgment claim for lack of

injury, as Plaintiff has sufficiently alleged (and Defendants does not contest) that a substantial

controversy exists between the parties. ¶108. *See Kidder, Peabody & Co. v. Maxus Energy*

*Corp.*, 925 F.2d 556, 562 (2d Cir. 1990) (a claim for declaratory judgment requires only a

substantial controversy between parties with adverse interests of sufficient immediacy).

## III.   DEFENDANTS VIOLATED TIA SECTION 316(B) AND SECTION 7.07 OF THE FIRST SUPPLEMENTAL INDENTURE[10]

The TIA imposes certain mandatory terms on qualified indentures to protect investors.

One mandatory term precludes issuers from impairing or affecting non-consenting noteholders'

right to receive payment of principal and interest on their notes or to institute suit for the

enforcement thereof. TIA Section 316(b) protects each and every holder's absolute and

unconditional right to receive payment of the "principal of . . . and . . . interest on such Security"

and "and to institute suit for the enforcement of any such payment, and such rights shall not be

---

[10] Because Section 7.07 is required by TIA Section 316(b), Plaintiffs address both the statutory and contract claims simultaneously. *See Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996) ("the interpretation of the indenture provisions mandated by the [Trust Indenture] Act does not depend on ordinary contract principles - the intent of the parties - but depends on an interpretation of the statue").

impaired or affected without the consent of such Holder." 15 U.S.C. § 77ppp(b). The First

Supplemental Indenture incorporates this protection. First Supp. Indenture, §7.07.[11]

### A. The TIA Was Implemented to Protect Holders' Unconditional Rights to Receive Payment of Principal and Interest

The TIA was "designed to vindicate a federal policy of protecting investors." *BOKF,*

*N.A. v. Caesars Entm't Corp.*, Nos. 15-cv-1561 (SAS), 15-cv-4634 (SAS), 2015 WL 5076785 at

*3 (S.D.N.Y. Aug. 27, 2015) (quotation marks omitted) (quoting *Bluebird Partners*, 85 F.3d at

974). TIA Section 316(b) "was designed to provide judicial scrutiny of debt readjustment plans

to ensure their equity." *MeehanCombs*, 80 F. Supp. 3d at 513 (citing authority). "As a result of

section 316(b), a company cannot – outside of bankruptcy – alter its obligation to pay bonds

without the consent of each bondholder." *Id.*

### B. The TIA Protects Holders' Payment Rights that Have Been Impaired or Affected by an Issuer's Out-of-Court Debt Restructuring Activities

TIA Section 316(b) "is designed to prevent" an "impermissible out-of-court debt

restructuring achieved through collective action." *MeehanCombs*, 80 F. Supp. 3d at 516; *see also*

*BOKF*, 2015 WL 5076785, at *4. Thus, TIA Section 316(b) protects *more* than the noteholders'

legal right to sue, it also protects noteholders' "practical ability" to recover payments as they

become due. *See Marblegate*, 75 F. Supp. 3d at 613; *Marblegate Asset Mgmt. v. Educ. Mgmt.*

*Corp.*, 111 F. Supp. 3d 542, 555 (S.D.N.Y. 2015) ("***Marblegate II***"); *MeehanCombs*, 80 F.

Supp. 3d at 515; *BOKF*, 2015 WL 5076785 at *4; *Federated Strategic Income Fund v. Mechala*

*Grp. Jamaica Ltd.*, No. 99-cv-10517, 1999 WL 993648, at *7 (S.D.N.Y. Nov. 2, 1999). Whether

a bondholder's rights have been impaired or affected is measured as of the date payment is due

under the indenture. *BOKF*, 2015 WL 5076785 at *10. An action that is part of a restructuring

---

[11] To the extent Section 7.07 falls short of the minimum protections mandated by the TIA, the protection of the TIA is incorporated by reference. *See* First Supp. Indenture, §1.03 ("Whenever this Indenture refers to a provision of the TIA, the provision is incorporated by reference in and made a part of this Indenture").

that has the effect of impairing the practical ability to recover at a later maturity date violates TIA Section 316(b) regardless of the issuer's financial condition at the time of the action. *Id.* at *10-11. Defendants claim these cases represent a "broad" view of the TIA, but these cases undoubtedly represent the prevailing view in this District.

Unable to distinguish the many TIA Section 316(b) cases from this Court, Defendants instead rely on two opinions from other courts that apply a narrow view of TIA Section 316(b) - that the statue protects only a "legal right" to payment when due. Defts' Br. at 13-14 (citing *Magten Asset Mgmt. Corp. v. Nw. Corp.*, 313 B.R. 595, 600 (Bankr. D. Del. 2004) and *YRC Worldwide, Inc. v. Deutsche Bank Trust Co. Americas*, No. 10-2106, 2010 WL 2680336 (D. Kansas, July 1, 2010)). Neither *Northwestern* nor *YRC* apply here. *Northwestern* dealt with a challenge to a transaction whereby the issuer's assets were transferred to an insolvent corporation that assumed the liabilities under the indenture. *Northwestern*, 313 B.R. at 595. The *Northwestern* court reached its holding without addressing *Federated* (SDNY precedent), and Defendants do not explain why the facts in the instant action more resemble *Northwestern* rather than *MeehanCombs*, *BOKF*, *Marblegate I, Marblegate II* or *Federated*.[12]

## C.     Plaintiffs Have Properly Pleaded a TIA Claim

The applicable case law demonstrates that Plaintiffs have properly alleged a TIA violation. For more than 15 years, courts in this District have reached the same conclusion as to the scope of TIA Section 316(b) – that the protection is broad and protects a bondholder's practical ability, not just legal right, to recover payments due under an indenture. *See BOKF*,

---

[12] *YRC* is also distinguishable, where the trustee alleged amendments to the indenture, which deleted the merger and "substantially all" covenants, violated TIA Section 316(b). 2010 WL 2680336, at *6-7 (court determined the amendments "would not necessarily leave the holders with no practical ability to receive payment due under the notes" because the trustee had not shown the company was in fact divesting itself of assets" such that the amendment would affect the holders' ability to recover.).

2015 WL 5046785, at *4, *MeehanCombs*, 80 F. Supp. 3d at 516; *Marblegate II*, 111 F. Supp. 3d at 555; *Federated,* 1999 WL 993648, at *7.

Plaintiffs allege that the 2020 Notes are TIA qualified debt securities (¶99), that the Exchange Offer has impaired or affected Plaintiffs' ability to receive payment on the 2020 Notes because (i) the 2020 Notes are now subordinated to 2023 Notes with respect to Defendants' assets, and (ii) Vanguard has faced severe challenges from recent declines in commodity prices and has experienced downgrades from rating agencies. ¶¶2, 48-51. And Defendants did not have Plaintiffs' consent to conduct the Exchange Offer. ¶102. For these reasons, Plaintiffs' right to receive payment has been affected or impaired in violation of TIA Section 316(b). *See, e.g.,* *BOKF*, 2015 WL 5046785, at *4, *MeehanCombs*, 80 F. Supp. 3d at 516; *Marblegate*, 111 F. Supp. 3d at 555; *Federated,* 1999 WL 993648, at *7.

*Oaktree Capital Mgmt., LLC v. Spectrasite Holdings, Inc.*, No. 02-548 (JJF), 2002 WL 32173072 (D. Del. June 25, 2002) is instructive. In *Oaktree Capital*, the plaintiffs, who were beneficial holders of notes issued by Spectrasite Holdings, Inc., sought to temporarily restrain implementation of a tender offer that would result in the transfer of substantially all of Spectrasite's assets to another entity and render the plaintiffs' notes subordinate to newly issued debt. *Id*. at *4. The plaintiffs alleged that the tender offer impaired and affected their rights to receive payments on their notes, violating TIA Section 316(b) and the indentures. *Id*. Spectrasite argued the TIA claim was not meritorious because the tender offer would purportedly strengthen its long-term prospects, permitting it to pay principal and interest when due, and that Spectrasite had the right to incur the senior debt. *Id*. While the *Oaktree* court ultimately denied the preliminary injunction motion, it held that plaintiffs had a reasonable probability of success on the merits on their TIA claim, noting that it could not address Spectrasite's solvency at that time,

15

and concluding that incurrence of senior debt could impair the *Oaktree* plaintiffs' right to receive payment on their notes, particularly in the event of a future bankruptcy filing. *Id*. Similarly, here, the issuer can be liable under the TIA even if there is no bankruptcy. *MeehanCombs*, 80 F. Supp. 3d at 515. It is enough that Plaintiffs allege Vanguard is financially distressed, the priority treatment of the 2023 Notes and out of court restructuring activities will impair or affect Plaintiffs' rights on the 2020 Notes. ¶¶2, 54, 56-57. *MeehanCombs*, 80 F. Supp. 3d at 515.

Defendants argue that none of the "recent TIA decisions" in this District support Plaintiffs' claims because the Exchange Offer did not remove a guarantee or dispose of any assets. Defts' Br. at 16. While recent TIA cases involved a removal of guarantees and/or disposition of assets, this does not limit the courts' reasoning from application here. Further, the Exchange Offer did involve a disposition of assets, in that Vanguard granted a security interest in its assets to the holders of the 2023 Notes, and its subsidiaries guaranteed the newly secured debt. Moreover, the Exchange Offer actually encumbered assets by granting liens to the 2023 Notes. *See generally In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 440 (Bankr. S.D.N.Y. 2012) (citing *Permanent Mission of India to the U.N. v. City of N.Y.*, 551 U.S. 193, 198 (2007)) ("Moreover, courts uniformly have treated a pledge or the attachment and perfection of a security interest as a 'transfer' of an interest in property."); 11 U.S.C. §101(54) ("transfer" is defined in the Bankruptcy Code to include "the creation of a lien."); *see also* Confidential Offering Memorandum dated January 8, 2016, pp. 32-33 (acknowledging that the security interest, evidenced by the new liens, is a transfer of an asset of the Defendants that could be avoided as a preference and/or fraudulent transfer under 11 U.S.C. §§ 544, 547, 548 and 550, as well as under applicable state law).  Under New York law, which governs the 2020 Notes, a "Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage

16

or pledge of tangible or intangible property, and also the creation of any lien or incumbrance."

N.Y. Debt. & Cred. Law § 270 (McKinney 2016). The Indentures even provide that an "Asset

Sale" is defined to include the conveyance or disposition of assets and rights of Vanguard or any

of its Restricted Subsidiaries, and excludes from the definition of "Asset Sales" (and for the

purposes of Section 5.10) "the granting of Liens not prohibited by Section 5.12 and dispositions

in connection with Permitted Liens." First Supp. Indenture, §1.01 (definition of "Asset Sales").

Practically, this diminishes the "free" or unencumbered value available to satisfy the 2020 Notes.

This is not dissimilar to a disposal of assets, which diminishes the assets to satisfy the 2020

Notes. Thus the recent TIA cases apply with equal force to Plaintiffs' claims.

Finally, Defendants assert that recent case law does not apply here because the Exchange

Offer was a not an out of court debt restructuring. Defts' Br. at 17. Whether Vanguard was

undergoing an out of court debt restructuring, as opposed to a routine business transaction

(unlikely given the write downs and financial distress), is an issue of fact and is not appropriate

for dismissal at this stage of the litigation. *See, e.g., BOKF,* 2015 WL 5075785, at *11

("summary judgment is inappropriate at this stage where, as here, there is a genuine dispute as to

whether the challenged transactions, either individually or collectively, were an out-of-court

reorganization and the record has not been fully developed").

## IV.    THE NO-ACTION CLAUSE DOES NOT BAR PLAINTIFFS' CLAIMS

Defendants cannot escape liability by relying on the "no-action" clause that does not

apply to Plaintiffs' claims. Section 7.06 provides for certain safeguards to ensure that claims and

causes of action commenced on behalf of bondholders are not duplicative, frivolous, or

economically inefficient as against the issuer at the expense of the majority's interest. *See*

*Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (2014). Section 7.06 is not

without limits, as the freedom from impairment with respect to the right to receive payment of

principal and interest is not limited by any other contractual limitation. Section 7.07 provides "*Notwithstanding any other provision of this Indenture*, the right of any Holder of a Note to receive payment of principal…" First Supp. Indenture, §7.07 (emphasis added).

Both the First Supplemental Indenture and TIA Section 316(b) permit Plaintiffs to institute a lawsuit to enforce their absolute and unconditional right to receive payment of principal and interest notwithstanding the no-action clause. Section 7.06 does not limit that exception to suits for unpaid principal and interest. *See MeehanCombs*, 80 F. Supp. 3d at 518; *Cont'l Cas. Co. v. State of N.Y. Mortg. Agency*, No. 94-cv-8408, 1998 WL 513054, at *4 (S.D.N.Y. Aug. 18, 1998) (action to enforce payment of principal and interest did not require compliance with no-action provisions where right to receive payment exception to no-action clause in indenture contained no express language limiting its application to suits for unpaid principal and interest); *see also Federated*, 1999 WL 993648, at *8 n.7.

Defendants fail to the address controlling case law and Plaintiffs' well pleaded allegations that their TIA and state law claims are excused from compliance with the no-action clauses. Instead, Defendants cite to *Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1297 (11th Cir. 2012), where the court even acknowledged the exception to the no-action clause when seeking the right to payment. *Id*. at 1297.

Even if Plaintiffs' claims were covered by the no-action clause, any requirement that Plaintiffs demand that the indenture trustee sue Vanguard alleging wrongdoing for a transaction to which the indenture trustee was a party (with a direct, financial stake) would be excused as futile. No-action clauses do not apply to suits against indenture trustees as "it would be absurd to require the [bond]holders to ask the trustee to sue itself." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir.1992). As a result of the Exchange Offer, U.S. Bank wore many hats (*i.e*., indenture

trustee, collateral agent, paying agent and registrar for the 2023 Notes), each enriching the bank with present and future financial compensation. ¶¶90-91. U.S. Bank would have rationally refused to attack a transaction that it personally benefitted from. *Id.* Defendants' assertion that the Complaint does not allege the trustee's financial benefit creates a conflict (Defts' Br. at 19) is belied by the Complaint's well-pleaded allegations[13] that U.S. Bank personally benefit from the Exchange Offer as a result of the new fees payable to it as a result of the transaction. ¶90-91.

Moreover, the very nature of the Exchange Offer, whereby institutional investors worked with the issuer and the trustee, to the detriment of the interests of the non-QIBs, was one of the reasons why Congress enacted the TIA in the first place. *See Marblegate II*, at 555.

Further, as a matter of equity, the Exchange Offer was announced on January 8, 2016, and consummated on February 10, 2016, well before Plaintiffs could have even complied with the 60-day requirement of the no action clause. ¶¶2, 89. While the purpose of a no-action clause is to prevent expensive lawsuits that do not have the support of at least 25% of the noteholders and that may not be in their "collective economic interest,"[14] that policy is questionable because of the nature of the conduct alleged and since Plaintiffs purport to represent a class of noteholders representing millions of dollars of aggregate principal amount of 2020 Notes. *See MeehanCombs*, 80 F. Supp. 3d at 520.[15] In fact, Judge Scheindlin permitted litigants to pursue their claims despite the no-action clause where such litigants held only 2% of one series of bonds

---

[13] Vanguard is wrong to suggest that Plaintiffs' conflict of interest allegations must be particularized (Defts' Br. at 19), as Plaintiffs need only plead "a short and plain statement of the claim." Fed. R. Civ. P. 8. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc*., 837 F. Supp. 2d 162, 184 (S.D.N.Y. 2011), which Defendants' rely on, does not apply, and does not state that conflict allegations are subject to Fed. R. Civ. P. 9. In *Ellington*, the court actually concluded that the claims against the trustee were in fact not subject to the no-action clause. *Id*. at 186. The plaintiffs' claims against the portfolio servicer were, however, subject to the no-action clause because plaintiffs did not allege that the trustee personally benefitted from the portfolio servicers' wrongdoing. *Id*. at188. Here, Plaintiffs detail the monetary benefits flowing to the Trustee as a result of the Exchange Offer. ¶¶90-91.

[14] *Ellington*, 837 F. Supp. 2d at 184.

[15] The *MeehanCombs* decision included a motion to dismiss claims brought by a small retail holder, in the action captioned *Frederick Barton Danner vs. Caesars Entm't Corp., et al*. S.D.N.Y. Case No. 14-cv-7973.

and 5% of another series of bonds, each significantly below the 25% threshold. *See MeehanCombs*, Case No. 14-cv-07091-JSR (S.D.N.Y.), ECF 1 (Complaint), ¶¶1, 12-16, 25.

## V.   PLAINTIFFS HAVE PLEADED A BREACH OF CONTRACT CLAIM

To state a breach of contract claim under New York law, a plaintiff must allege: (1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach. *Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 12-cv-3634, 2013 WL 909184, at *1 (2d Cir. Mar. 12, 2013); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). The Complaint adequately alleges each of these elements.

### A.   Defendants Breached Section 7.07 by Consummating the Exchange Offer

Defendants do not dispute that the Complaint properly alleges these elements with respect to a breach of Section 7.07, but argue that the claim should be dismissed as duplicative of the TIA claim. Defs' Br. at 20. This argument was rejected in *MeehanCombs*, 80 F. Supp. 3d at 520 (upholding breach of contract claim and TIA Section 316(b) claim).

### B.   Defendants Breached Section 5.12 by Consummating the Exchange Offer

Defendants wrongly assert they were permitted to exclude Plaintiffs and other non-QIBs from the Exchange Offer under certain circumstances, and that Plaintiffs have "failed to plausibly allege that the Exchange Offer was not permitted under each of these provisions [permitted exceptions]." Defs' Br. at 20-21. Plaintiffs allege that the "new liens" given to secure the 2023 notes were not "Permitted Liens" under the First Supplemental Indenture because: (1) since Vanguard has not disclosed that its internal financial statements permit the 2023 Notes to qualify under Section 5.09(a)'s Fixed Charge Coverage Ratio, the Exchange Offer did not fall within the exception in Section 5.09(a), which permitted Vanguard to incur additional debt when the amount of the debt incurred is less than a certain amount (¶¶128, 134); (2) although the 2023 Notes are issued under an indenture, and thus may qualify as "Credit Facilities," Section

5.09(b)(1) only applies to additional indebtedness and Defendants did not incur additional indebtedness as a result of the Exchange Offer, as they merely exchanged unsecured debt for new secured debt (¶¶118-119);  and (3) since Vanguard did not disclose if the amount of debt incurred in the Exchange Offer exceeds 5% of Vanguard's Adjusted Consolidated Net Tangible Assets, determined on the date of such incurrence or issuance, the Exchange Offer did not fall within the exception set forth in 5.09(b)(16). ¶¶130-135.[16] For these reasons, the liens incurred in the Exchange Offer were not "Permitted Liens" under the First Supplemental Indenture.

Defendants argue they did not breach Section 5.12 because the liens securing the 2023 Notes were "Permitted Liens," and they were permitted to secure Indebtedness under Credit Facilities that were permitted to be incurred under Section 5.09. Defts' Br. at 22. Plaintiffs have alleged that the liens securing the 2023 Notes were not Permitted Liens under Section 5.09, thus Defendants breached Section 5.12. Furthermore, Defendants' argument has been rejected under New York law under very similar circumstances. *See Bank of N.Y. Mellon v. Realogy Corp*., 979 A.2d 1113, 1128 (Del. Ch. 2008) (finding QIBs-only exchange offer was impermissible and in violation of indenture terms because additional indebtedness was not a permitted lien).

---

[16] Defendants misread Section 5.09(a). Section 5.09(a) specifically provides that the "Issuers may incur Indebtedness … if the Fixed Charge Coverage Ratio for the Company's most recently ended four full fiscal quarters for which internal financial statements are available preceding the date on which such additional Indebtedness is incurred … would have been at least 2.25 to 1.0 …" (emphasis added). "Company" is defined in the Indentures as "[VNR], and any and all successors thereto." First Supp. Indenture, §2.01. To the extent Defendants claim Vanguard and its subsidiaries are to be included in determining the Fixed Charge Coverage Ratio, that argument is negated by the fact that Fixed Charge Coverage Ratio means "with respect to any specified person for any fourth-quarter reference period, the ratio of the Consolidated Cash Flow of such Person for such period to the Fixed Charges of such Person for such period." *Id*. Vanguard, here, is the "specified person," and thus the calculation for the Fixed Charge Coverage Ratio does not include subsidiaries.

Even if the test is as Vanguard argues, the Complaint is still pleaded sufficiently because the definition of "Fixed Charges" and "Consolidated Cash Flow" include Vanguard's "restricted Subsidiaries" and the Complaint (¶134) pleads that Vanguard reports on a consolidated basis for all subsidiaries, not just "restricted subsidiaries."

## VI.   THE COMPLAINT STATES A CLAIM FOR VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The duty of good faith and fair dealing is "[i]mplicit in all contracts … in the course of contract performance," and "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted). A party breaches that duty when it acts in a manner that deprives the other party of the benefit of its bargain, regardless of any technical breach of contract. *See Chase Manhattan Bank, N.A. v. Keystone Distribs.*, 873 F. Supp. 808, 816 (S.D.N.Y. 1994).

Numerous provisions in the Indentures make clear that holders of the 2020 Notes were to be treated equally irrespective of whether such holders were QIBs or non-QIBs. ¶¶8, 142-143. And the Exchange Offer – which resulted in the 2020 Notes being subordinate to the very notes that were once part of the same debt issuance – deprived Plaintiffs of the benefit of their bargain under the Indentures, including the ultimate benefit – the right to receive payment on the 2020 Notes. ¶144. The 2020 Notes offering prospectus did not disclose the risk of the Exchange Offer, or that a large portion of the 2020 Notes could one day be subordinate to a portion of the very same notes issued in the original offering, nor could Plaintiffs have foreseen such a risk at the time they purchased their 2020 Notes. ¶¶7, 145. These allegations state a breach of the covenant of good faith and fair dealing. *See MeehanCombs*, 80 F. Supp. 3d at 520 (breach of good faith and fair dealing claim upheld where defendants impaired plaintiffs' right to payment under notes without plaintiffs' consent); *Chase Manhattan Bank*, 873 F. Supp. at 816 (good faith and fair dealing claim upheld where plaintiff alleged defendant manipulated funds' sales to dry up stream of income defendant was obligated to pay plaintiff and took steps to keep the income for itself).

Despite Plaintiffs' well pleaded allegations that Defendants violated Sections 5.12 and 7.07 in effectuating the Exchange Offer (*see* Count II and III), Defendants assert that Plaintiffs have not identified an express provision in the Indentures that has been breached. Defts' Br. at 23. Plaintiffs allege that the Indentures expressly prohibited Vanguard from incurring liens to secure the 2023 Notes in the Exchange Offer without giving equal and ratable liens to the remaining 2020 Notes. Section 5.09 prohibits Vanguard from issuing secured debt, and provides for limited exceptions, as set forth in Section 5.09. ¶120. Defendants have not demonstrated compliance with Section 5.09. Thus, Plaintiffs properly allege that the Exchange Offer violated the express terms (and limitations) of Section 5.12 because the incurred liens securing the 2023 Notes were not incurred on an equal or ratable basis to the 2020 Notes. ¶¶113-138.

Defendants' argument that the implied covenant claim fails because Plaintiffs have not alleged a breach of an explicit term of the Indentures is also belied by the Complaint's allegations that Vanguard breached Section 7.07 by implementing the Exchange Offer. ¶¶9, 106-111. Moreover, a "claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative." *Fantozzi v. Axsys Techs., Inc.,* No. 07–cv–2667(LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).

## VII.   THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT

To state an unjust enrichment claim, a plaintiff must allege: "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiffs allege that the Exchange Offer allowed Defendants to eliminate hundreds of millions of debt incurred under the Indentures and, thus, Defendants were enriched by the transaction. ¶¶148-149. Plaintiffs further allege that, as a direct and intentional result of the Exchange Offer, the 2020 Notes held by

Plaintiffs were subordinated to the 2023 Notes, which reduced the value of the 2020 Notes and impaired Plaintiffs' rights to receive interest and principal. ¶¶12, 149.

Defendants seek dismissal of the unjust enrichment claim as duplicative of the Section 7.07 claim. Defts' Br. at 24.[17] However, a plaintiff may plead unjust enrichment in the alternative to breach of contract. *Goldman v. Simon Prop. Grp., Inc*., 58 A.D.3d 208, 220 (2d Dep't 2008) (permitted pleading unjust enrichment as alternative to breach of contract claim). Pleading in the alternative should particularly be allowed in this case, where Defendants argue that the breach of contract claim should be dismissed as duplicative of the TIA claim. A properly pleaded TIA violation does not preclude the assertion of both contract or quasi-contract claims.

## VIII. THE COMPLAINT STATES A DECLARATORY JUDGMENT CLAIM THAT IS NOT DUPLICATIVE OF PLAINTIFFS' OTHER CLAIMS

The Declaratory Judgment Act states that "[i]n a case of an "actual controversy" within its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such a declaration…." 28 U.S.C. § 2201(a). An "actual controversy" is "'real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 177 (2d Cir. 2001) (quotations omitted). In considering an action for declaratory judgment, a court must ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *Kramer v. Lockwood Pension Servs.,* 653 F. Supp. 2d 354, 375-76 (S.D.N.Y. 2009) (citation omitted).

Plaintiffs seek a declaration regarding the validity and enforceability of the Exchange Offer and the 2023 Notes. ¶¶155, 159. A declaration of rights under the Indentures is necessary

---

[17] Defendants do not seek to dismiss Plaintiffs' unjust enrichment claim on ground of as being duplicative of Plaintiffs' breach of Section 5.12 claim.

and appropriate to establish that the Exchange Offer is ineffective and that the liens purportedly created in the Exchange Offer for the benefit of the 2023 Notes are null and void. *Id.* Plaintiffs seeks a declaration of their, and other bondholders', rights under a contract (the Indentures), making this an "appropriate circumstance for declaratory judgment." *Penn. Mut. Life Ins. Co. v. Wolk*, 739 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (finding declaratory judgment claims proper, including declaration of rights under an insurance contract).

Defendants do not argue the existence of an actual controversy, but that the declaratory judgment claims are duplicative. Defts' Br. at 24-25. Defendants rely on *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290 (S.D.N.Y. 2012), which misses the mark. In *Fleisher*, the Court declined to exercise its discretion to entertain the plaintiffs' declaratory judgment claim because the declaration plaintiffs sought was "so similar to that covered by their express breach of contract claim." *Id.* at 302. Here, Plaintiffs' breach of contract and declaratory judgment claims are not "so similar," since Plaintiffs seek damages (along with the declaratory relief) to remedy the harm caused them by Defendants' breach of the Indentures. ¶¶110-111, 138. *See GSO Coastline Credit Partners LP v. Global A&T Elecs. Ltd.*, 30 N.Y.S.3d 109, 111 (N.Y. Sup. Ct. 2016) (reinstating declaratory relief claim where the complaint stated breach of contract claim).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.[18]

---

[18] If the Court determines Plaintiffs have not properly pleaded any or all of their claims, Plaintiffs respectfully request the right to replead such claims. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend is "freely granted").

Dated: September 19, 2016

Respectfully submitted,

**GARDY & NOTIS, LLP**

By: */s/ Meagan Farmer*
Mark C. Gardy
James S. Notis
Meagan Farmer
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel:  212-905-0509
Fax:  212-905-0508

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
Gordon Z. Novod
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel:  646-722-8500
Fax:  646-722-8501

*Attorneys for Plaintiffs*