**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE VANGUARD NATURAL RESOURCES BONDHOLDER LITIGATION | No. 16-cv-1578 (PKC)<br><br>ECF Case |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

VINSON & ELKINS LLP
Michael C. Holmes*
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
*mholmes@velaw.com*

VINSON & ELKINS LLP

*/s/ Ari M. Berman*
Ari M. Berman
Laurel S. Fensterstock
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
*aberman@velaw.com*
*lfensterstock@velaw.com*

*Counsel for Defendants Vanguard Natural Resources, LLC, VNR Finance Corp., Vanguard Natural Gas, LLC, VNR Holdings, LLC, Vanguard Permian, LLC, Encore Energy Partners Operating LLC, Encore Clear Fork Pipeline LLC, Vanguard Operating, LLC, Escambia Operating Co. LLC, Escambia Asset Co. LLC, Eagle Rock Upstream Development Company, Inc., Eagle Rock Upstream Development Company II, Inc., Eagle Rock Acquisition Partnership, L.P., Eagle Rock Acquisition Partnership II, L.P., Eagle Rock Energy Acquisition Co., Inc., and Eagle Rock Energy Acquisition Co., II, Inc.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. PLAINTIFF HAS SUFFERED NO INJURY-IN-FACT ....................................................2

II. THE EXCHANGE OFFER COMPLIED WITH THE TRUST INDENTURE ACT..................................................................................................................................5

III. THE STATE LAW CLAIMS SHOULD BE DISMISSED................................................7

    A. THE NO-ACTION CLAUSE BARS THE STATE LAW CLAIMS .......................7

    B. THE BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED ..............8

        1. PLAINTIFF CONCEDES ITS SECTION 7.07 CLAIM FAILS.................8

        2. PLAINTIFF HAS FAILED TO PLEAD A BREACH OF SECTION 5.12................................................................................................8

    C. THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED ........................................................9

    D. UNJUST ENRICHMENT IS NOT AVAILABLE AS A CAUSE OF ACTION .................................................................................................................9

    E. THE DECLARATORY JUDGMENT CLAIMS ARE DUPLICATIVE AND SHOULD BE DISMISSED .........................................................................10

CONCLUSION................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ................................................................................................... 2

*Bank of New York Mellon v. Realogy Corp.*,
    979 A.2d 1113 (Del. Ch. 2008) ............................................................................................. 8

*Continental Casualty Co. v. State of New York Mortgage Agency*,
    No. 94 CIV. 8408 (KMW), 1998 WL 513054 (S.D.N.Y. Aug. 18, 1998) ............................. 7

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777, 967 N.E.2d 1177 (2012) ............................................................................. 10

*Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*,
    No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999) ..................................... 7

*Friedman v. Chesapeake & O. Ry. Co.*,
    395 F.2d 663 (2d Cir. 1968) ................................................................................................... 8

*Goldman v. Simon Property Group, Inc.*,
    58 A.D.3d 208, 869 N.Y.S.2d 125 (2008) ........................................................................... 10

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
    723 F. Supp. 976 (S.D.N.Y. 1989) ......................................................................................... 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) .................................................................................... 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................... 4

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ................................................................................................... 2

*Marblegate Asset Management v. Education Management. Corp.*,
    75 F. Supp. 3d 592 (S.D.N.Y. 2014) .............................................................................. 4, 5, 6

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.*,
    Br. of Amicus Curiae Caesars Entm't Corp. at 15-16, No. 15-2124 (2d Cir. Sept. 16, 2015) ... 5

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp., LLC*,
    Resp. Br. for Appellees at 47-48, No. 15-2124 (2d Cir. Dec. 9, 2015) .................................. 5

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.*,
    Reply Br. for Intervenor-Appellant at 10, No. 15-2124 (2d Cir. Dec. 23, 2015) ................... 5

*MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entertainment Corp.*,
    80 F. Supp. 3d 507 (S.D.N.Y. 2015 ............................................................................. 4, 5, 6, 7

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
    716 F. Supp. 1504 (S.D.N.Y. 1989) ....................................................................................... 9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ................................................................................................. 3

*Oaktree Capital Management, LLC v. Spectrasite Holdings, Inc.*,
  No. CIV.A. 02-548 JJF, 2002 WL 32173072 (D. Del. June 25, 2002) ..................................... 6

*Policemen's Annuity & Benefit Fund of Chicago v. Bank of America, NA*,
  907 F. Supp. 2d 536 (S.D.N.Y. 2012) ...................................................................................... 4

*Ross v. AXA Equitable Life Ins. Co.*,
  115 F. Supp. 3d 424 (S.D.N.Y. 2015) ...................................................................................... 4

*Royal Park Investments SA/NV v. HSBC Bank USA, National Association*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015) ...................................................................................... 3

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................................................. 4

*Tasini v. New York Times Co.*,
  184 F. Supp. 2d 350 (S.D.N.Y. 2002) ...................................................................................... 5

# **PRELIMINARY STATEMENT**[1]

This case should be dismissed because the Plaintiff has not suffered any harm. The 2020 Notes have almost doubled in value since the day before the Exchange Offer, and Plaintiff has not alleged that Vanguard has missed any payments under the Indenture. Plaintiff has suffered no injury-in-fact, and lacks the requisite Article III standing for this Court to adjudicate its claims.

Even assuming Plaintiff can show it has standing, the Complaint nonetheless fails to state a claim. Both the Indenture and TIA permit the Exchange Offer, and Plaintiff has not plausibly alleged otherwise. Plaintiff attempts to follow in the shaky footsteps of bondholders of Caesars Entertainment Corp. and Education Management Corp., whose cases, for now, have expanded the meaning of impairment under the TIA. Vanguard's Exchange Offer, however, cannot be compared to the actions taken by Caesars or Education Management – each of which involved the elimination of guarantees and stripping of assets. Vanguard engaged in a voluntary debt exchange, which resulted in a reduction of the company's overall debt and an improved financial condition. This Court should not be the first to find a routine debt exchange, like the Exchange Offer, to be the type of impairment sufficient to violate the TIA.

Plaintiff's other allegations similarly lack merit—Plaintiff has failed to plausibly allege: (1) why it was excused from complying with the Indenture's No-Action Clause; (2) how it was deprived of the benefit of its bargain; and (3) how the unjust enrichment claim and declaratory judgment claims are standalone claims. Accordingly, Vanguard respectfully submits that the Complaint should be dismissed in its entirety with prejudice.

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' Memorandum of Law in Support of Their Motion to Dismiss, Dkt. No. 41 (the "Motion" or "Mot."). Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss, Dkt. No. 44, is cited as "Opp."

**ARGUMENT**

I.    PLAINTIFF HAS SUFFERED NO INJURY-IN-FACT

Plaintiff admits, as it must, that it must prove that this Court has subject matter jurisdiction over this case, including satisfaction of all elements of Article III standing. Opp. at 8. But, Plaintiff incorrectly asserts that this Court must accept all allegations in the Complaint as true. The Second Circuit has made clear that, in "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where documentary evidence contradicts a conclusory allegation, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

Plaintiff alleges it has been injured as a result of the Exchange Offer because the 2020 Notes have been subordinated to the 2023 Notes.[2] Plaintiff argues that subordination harms it in two ways: (1) the 2020 Notes have "diminished in value as a result of the Exchange Offer," Opp. at 8; and (2) subordination alone constitutes harm. Opp. at 9. Neither holds any water.

Plaintiff's "diminished value" argument relies on a series of conclusory allegations[3] that are contradicted by evidence properly before this Court. The day before the Exchange Offer was announced, the 2020 Notes traded at approximately 28% of their principal value i.e., $28.29. *See*

---

[2] Plaintiff also claims it was somehow injured by virtue of its inability to participate in the Exchange Offer -- but alleges no plausible facts to support its claim. Opp. at 11. Such a generalized allegation is insufficient to establish injury-in-fact. *See Amidax*, 671 F.3d at 145 ("to survive . . . the federal defendant's Rule 12(b)(1) motion to dismiss, [Plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue.").

[3] "As a direct and intentional result of the Exchange Offer, the 2020 Notes held by Plaintiffs and the Class have been subordinated to the 2023 Notes with respect to assets of the Defendants to which the 2023 Notes have liens, reducing the value of the 2020 Notes and impairing the rights of Plaintiffs and other Class members under the Indentures to receive interest and principal." Compl. ¶ 149; "As a result of the Exchange Offer, the Defendants unjustly enriched themselves, reducing indebtedness, while impairing the rights of the Plaintiffs and other Class members to receive principal and interest and reducing the value of the 2020 Notes." Compl. ¶ 13.

Decl. Ex. H.  The day Plaintiff filed its Complaint, the 2020 Notes traded at approximately 38% of their principal value i.e., $38.76.  *Id.*  And, more recently, as of October 6, the 2020 Notes traded at approximately 52% of their principal value, i.e., $52.00.[4]  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 245 n.61 (S.D.N.Y. 2004) ("On a motion to dismiss, a court may take judicial notice of the market prices of publicly traded securities . . . .").

Plaintiff relies substantially on three cases, none of which rescues Plaintiff's fatally flawed Complaint.  The first is *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), in which the plaintiff alleged a 55–65% drop in market value of the securities at issue, *id.* at 155, thus satisfying the injury-in-fact requirement; moreover, the crux of that dispute related to the definition of damages under Section 11 of the Securities Act, which is irrelevant to this case.  *Id.* at 165.  The second is *Royal Park Investments SA/NV v. HSBC Bank USA, National Association*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015), which, as an initial matter, did not address Article III standing.  And, unlike here, the plaintiff in *Royal Park* specifically alleged that its securities had diminished in value and, as a result, it had suffered "enormous delinquency rates, collateral write-downs, and losses." *See* BR ¶¶ 509, 530–531; *Royal Park*, 109 F. Supp. 3d at 612.  Here, by contrast, Plaintiff's securities have *increased* in value.  *See In re AOL Time Warner*, 381 F. Supp. 2d at 246 (dismissing claims by bondholders for failure to satisfy the injury-in-fact requirement because "rather than alleging any losses on [the] bonds, the allegations of the . . . Complaint reveal that [the] bonds purchased . . . have actually increased in value."). Plaintiff's third case is *Policemen's Annuity & Benefit Fund of Chicago v. Bank of America, NA*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012), where the Court held that the plaintiff had Article III

---

[4]  http://finra-markets.morningstar.com/BondCenter/BondDetail.jsp?ticker=C573045&%20symbol=VNR384007 5 (FINRA quotation page for the 2020 Notes).

standing because, unlike here, the plaintiff "sold the [securities] at a loss and thereby suffered damages." *Id.* at 546.

Plaintiff's argument that subordination of the 2020 Notes, by itself, somehow caused harm fares no better. First, Plaintiff has not cited to any case holding that that subordination alone is sufficient to satisfy the injury-in-fact requirement. Second, as discussed at length in the Motion, injury-in-fact must be "*actual or imminent*, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). Subordination cannot satisfy the actual or imminent requirement, because it only affects Plaintiff in the event that Vanguard files for bankruptcy and there are insufficient assets to make creditors whole. Plaintiff admits that it "do[es] not allege an imminent bankruptcy filing . . .." *See* Opp. at 9 n.6. Therefore, the harm Plaintiff complains of is neither actual nor imminent, and, in fact, may never come to pass.[5] The risk that Vanguard would be "unable to pay Plaintiff[s'] claims" is "far too hypothetical, speculative, and uncertain to constitute an 'imminently threatened injury' worthy of federal judicial intervention." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 437 (S.D.N.Y. 2015) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).[6]

---

[5] Although the Court in *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entertainment Corp.*, 80 F. Supp. 3d 507, 516 (S.D.N.Y. 2015), denied a motion to dismiss TIA and contract claims where there had been no formal bankruptcy filing or missed payment at the time the lawsuits were filed, the transaction at issue stripped plaintiffs of valuable assets, there had been an express acknowledgment that bankruptcy was imminent, and filing occurred shortly thereafter. In *Marblegate Asset Management v. Education Management. Corp.*, 75 F. Supp. 3d 592, 605 (S.D.N.Y. 2014) (currently on appeal before the Second Circuit), the defendant did not raise a standing defense; the Court denied a preliminary injunction motion because the possible harm was "remote or speculative rather than actual or imminent."

[6] Plaintiff argues that the Offering Memorandum sets forth the harms that it allegedly has suffered. Opp. at 12. But, every one of those alleged harms is purely hypothetical and has never come to fruition: "[t]he unsecured nature of the claims of the [2020] Notes *could* materially and adversely affect the value of a holder's [2020] Notes that remain outstanding following the completion of the Exchange Offer and, *in the event of a bankruptcy*, . . . In the event of *our bankruptcy*,. . . *it is possible* that our . . . assets remaining after such secured indebtedness has been satisfied will be insufficient to satisfy the claims of holders of [2020] Notes . . ." (emphasis added). Compl. ¶ 64.

Plaintiff argues that Defendants do not challenge its declaratory judgment claim, but this has no effect on Plaintiff's burden to prove injury-in-fact. "The determination of whether a plaintiff has standing, . . . is antecedent to any declaratory judgment determination." *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 356 (S.D.N.Y. 2002).

II.     THE EXCHANGE OFFER COMPLIED WITH THE TRUST INDENTURE ACT

It is indisputable that Plaintiff has not suffered a legal impairment within the meaning of the TIA. Opp. at 5, 13-14. Undeterred, Plaintiff argues it has suffered a practical impairment akin to *MeehanCombs* and *Marblegate* where courts deemed such impairment to be a potential violation of the TIA. *Id.* In its Motion, Vanguard distinguished at length those cases—which have been highly criticized.[7] Mot. at 14–17. In short, unlike *MeehanCombs* and *Marblegate*, here, Plaintiff does not plausibly allege that the Exchange Offer disposed of or transferred assets, leaving noteholders with an empty shell from which to collect payment. *Marblegate*, 75 F. Supp. 3d at 615; *MeehanCombs*, 80 F. Supp. 3d at 515–16. Nor does Plaintiff allege that the 2020 noteholders are not entitled to collect from an entity which owns the same assets as it did prior to the Exchange Offer.

---

[7] Brief of *Amicus Curiae* Caesars Entertainment Corporation in Support of Defendants-Appellants at 15-16, *Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.,* No. 15-2124 (2d Cir. Sept. 16, 2015) ("[The *Marblegate* decisions] could call into question **such routine transactions as taking on senior debt**; selling assets; paying dividends; undertaking an acquisition; embarking on a new business venture; or **refinancing debt senior to the holders' debt on more onerous terms**.") (emphasis added); Reply Brief for Intervenor-Appellant at 10, *Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.,* No. 15-2124 (2d Cir. Dec. 23, 2015) ("Many **commonplace financial transactions** could, especially in hindsight, be argued to relate to a 'debt restructuring.' For example, **an exchange offer that allows unsecured noteholders to convert to secured notes at a discount** could be argued to violate the TIA if it later turns out that the issuer enters bankruptcy and the unsecured notes are worth less than they would have been in the absence of the exchange offer.") (emphasis added). Notably, on appeal, the bondholders in *Marblegate* have rejected Plaintiff's interpretation of the TIA and disavowed the fact pattern in this case as running afoul of Section 316(b). *See* Response Brief for Appellees at 47-48, *Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Fin. Corp.,* No. 15-2124 (2d Cir. Dec. 9, 2015) (distinguishing an impermissible involuntary debt restructuring that will "permanently reduce the payments a company will make to its creditors" from situations that do not implicate Section 316(b), such as when "**a company decides to issue new debt**, makes a strategic acquisition or spin-off, or changes its business plan in a way that goes sour," all of which are transactions that "can be taken outside of bankruptcy court") (emphasis added).

Plaintiff also misstates the holding of *Oaktree Capital Management, LLC v. Spectrasite Holdings, Inc.*, No. CIV.A. 02-548 JJF, 2002 WL 32173072, at *4 (D. Del. June 25, 2002). Contrary to Plaintiff's assertion (Opp. at 15–16), the Delaware Court did not hold that the *Oaktree* plaintiffs had a reasonable probability of success on the merits of their TIA claim; rather, in denying the plaintiffs' preliminary injunction motion, the Court stated:

> Because the Court will not address the issue of Defendants' solvency at this juncture, the Court cannot conclude that Plaintiffs have an unreasonable probability of success on the merits. Should Defendants file a bankruptcy action, a court may find that the Tender Offer Transactions, entered into at a time near the bankruptcy, impaired the rights of the Indentures by incurring significant senior debt.

*Id.* at *4. The Court added that it was "unwilling to interfere with the market when Plaintiffs knowingly subjected themselves to the possibility of senior debt as a risk of investing." *Id*. at *8. Thus, *Oaktree* does not get Plaintiff any closer to showing it has adequately alleged a practical impairment within the meaning of the TIA.

Ultimately, Plaintiff makes no secret of its attempt to further stretch the meaning of the TIA beyond *MeehanCombs* and *Marblegate*, stating that while "recent TIA cases involved a removal of guarantees and/or disposition of assets, this does not limit the courts' reasoning from application here." Opp. at 16. Despite acknowledging that *MeehanCombs* and *Marblegate* involved a removal of a guarantee and disposition of assets, Plaintiff nonetheless urges the Court to further extend the TIA to a routine exchange offer. Condoning Plaintiff's baseless challenge to a routine business transaction—especially considering Plaintiff's failure to allege any actual harm—would unnecessarily create further disruption to the bond markets.

### III.   THE STATE LAW CLAIMS SHOULD BE DISMISSED

#### A.   THE NO-ACTION CLAUSE BARS THE STATE LAW CLAIMS

Plaintiff does not dispute that it failed to comply with the Indenture's No-Action Clause. Opp. at 18. Rather, Plaintiff claims it should be excused from doing so because the No-Action Clause is limited by Section 7.07's prohibition against impairing or affecting a noteholder's right to bring suit for the enforcement of payment of principal or interest on the 2020 Notes. But Section 7.07's limitation of the No-Action Clause is narrowly tailored to apply only in the event that Vanguard misses a payment under the Indenture.[8] *See* Decl. Ex. B § 7.07 ("the right . . . to bring suit for the enforcement of any such payment on or after . . . respective dates, shall not be impaired or affected").[9] And, Plaintiff has not brought such a claim in this action.

Plaintiff also argues it should not have to comply with the No-Action Clause's 25% requirement because Plaintiff "purport[s] to represent a class of noteholders representing millions of dollars in aggregate principal amount of 2020 Notes." Opp. at 19. But, Plaintiff's styling of its case as a putative class action is no excuse for its abject failure to comply with the clear and unambiguous terms of the Indenture. *See e.g., Friedman v. Chesapeake & O. Ry. Co.*, 395 F.2d 663 (2d Cir. 1968) (affirming dismissal of class action filed by 1% holder for failing to comply with the 25% requirement).

---

[8] Although the Court in *MeehanCombs* found that the no-action exception is not limited to cases for past due amounts, unlike the Indenture in this case, the *MeehanCombs* indenture provided that the noteholders' right to payment was "absolute and unconditional," 80 F. Supp. 3d at 518, and the Court made clear that it relied on the plain language of the indenture for its holding. *Id.* Similarly, in *Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, No. 99 CIV 10517 HB, 1999 WL 993648, at *5 (S.D.N.Y. Nov. 2, 1999), the indenture provided that the noteholders' right to payment was "absolute and unconditional." While Plaintiff argues that its right to receive payment pursuant to TIA 316(b) and the Indenture is absolute and unconditional, Opp. at 18, this is at odds with controlling case law. *See* Mot. at 12, 14.

[9] Plaintiff mistakenly relies upon *Continental Casualty Co. v. State of New York Mortgage Agency*, No. 94 CIV. 8408 (KMW), 1998 WL 513054, at *4 (S.D.N.Y. Aug. 18, 1998). There, the Court held that absent an express limitation of the right to bring suit for unpaid principal and interest, the no-action clause will not bar a suit for principal and interest which has not yet accrued. Here, however, the Indenture expressly limits the right to payment and to bring suit to enforce such payment to unpaid principal and interest. Decl. Ex. B § 7.07.

In sum, this Court should extend Plaintiff no quarter with respect to its inexplicable failure to comply with the clear terms of the No-Action Clause. This is not an emergency situation where Plaintiff is seeking to enjoin a specific transaction. Rather, this is a routine lawsuit, alleging a violation of the TIA and the Indenture. Plaintiff has not—and cannot—plausibly demonstrate why it should be excused from complying with the specifically negotiated prerequisites to initiating a lawsuit pursuant to the Indenture.

### B. THE BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED

#### 1. PLAINTIFF CONCEDES ITS SECTION 7.07 CLAIM FAILS

Plaintiff concedes that the TIA and breach of Section 7.07 claims rise or fall together. Opp. at 12 n.10. Thus, this claim should be dismissed for the reasons discussed *supra*.

#### 2. PLAINTIFF HAS FAILED TO PLEAD A BREACH OF SECTION 5.12

Plaintiff's Opposition does nothing to rescue its claim under Section 5.12. There is no dispute that the Indenture permits Vanguard to incur additional debt under certain circumstances. Decl. Ex. B § 5.09; Opp. 21. For Plaintiff's claim to survive the Motion, Plaintiff must plausibly allege that Vanguard has failed to meet the Indenture's conditions for incurring additional debt—but the Complaint does no such thing. Instead, in an attempt to manufacture an issue of fact where none exists, Plaintiff flips the burden of proof on its head by arguing that Vanguard somehow must now demonstrate that it complied with Section 5.09. Opp. at 20–21.[10] The Indenture does not require Vanguard to disclose that the Fixed Charge Coverage Ratio fit within the confines of Section 5.09(a)'s requirement. *See* Decl. Ex. B. Moreover, the 2023 Notes were

---

[10] Plaintiff wrongfully contends that Defendants' argument "has been rejected under New York law under very similar circumstances," Opp. at 21, citing to *Bank of New York Mellon v. Realogy Corp.*, 979 A.2d 1113, 1117 (Del. Ch. 2008). There, however, the Delaware Court simply held that a credit agreement prohibited the challenged transaction because it would have created new liens expressly forbidden by such agreement. *Id.* at 1127. The Court's holding cannot be extended to all credit agreements/indentures and certainly cannot be extended to the Indenture here, which permits the incurrence of the liens at issue. Mot. 22.

additional Indebtedness incurred by Vanguard because the 2023 noteholders were given notes with a reduced interest rate, reduced principal amount and later maturity date. Compl. ¶ 54. And, the liens incurred were Permitted Liens. Decl. Ex. B. § 2.01. Plaintiff does not allege any plausible facts to show otherwise.

      C.      THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED

As discussed in the Motion, nothing in the Indenture required the Exchange Offer to be offered on a *pro rata* basis. *See* Mot. at 21. While Plaintiff alleges that it has been deprived of the benefit of its bargain, Plaintiff points to terms of the Indenture that apply to scenarios other than exchange offers. Opp. at 22. The Indenture "could easily have been drafted to incorporate expressly the terms the Plaintiff[] now urge[s] this court to imply." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 992 (S.D.N.Y. 1989). Plaintiff improperly asks the Court to "create an additional benefit for which they did not bargain." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989).

It is also disingenuous for Plaintiff to argue that it could not have foreseen the 2020 Notes being subordinate to other debt. The Indenture itself gave Vanguard the right to incur additional secured debt, *see* Decl. Ex. B § 5.09, and the Registration Statement gave warnings about the risk of incurring senior secured debt. *See* Decl. Ex. C at S-17. Vanguard cannot be held responsible for Plaintiff's failure to read the Indenture or the Registration Statement.

      D.      UNJUST ENRICHMENT IS NOT AVAILABLE AS A CAUSE OF ACTION

Plaintiff relies on *Goldman v. Simon Property Group, Inc.*, 58 A.D.3d 208, 869 N.Y.S.2d 125 (2008), to argue that it is entitled to plead unjust enrichment in the alternative to breach of contract. Opp. at 24. *Goldman* held that "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon

9

a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies." 58 A.D.3d at 220.  Here, there is no dispute that the Indenture is a contract and applies to this dispute.  Plaintiff does not even allege unjust enrichment in the alternative to the breach of contract claims.  Instead, Plaintiff ties the claims together—"benefits were obtained by intentionally violating Plaintiffs' and the Class' contractual rights under the Indentures. . . ."  Compl. ¶ 150.  Unjust enrichment is thus unavailable as a cause of action.  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91, 967 N.E.2d 1177, 1185 (2012).

### E. THE DECLARATORY JUDGMENT CLAIMS ARE DUPLICATIVE AND SHOULD BE DISMISSED

Plaintiff asserts that the declaratory judgment claim and contract claims are "not 'so similar', since Plaintiff's seek damages (along with the declaratory relief)" but does not expand on such assertion or explain how they are different.  Opp. at 25.  As discussed in the Motion, Mot. at 24–25, there will be no need to address Counts Six and Seven once Counts One and Two are resolved.  Therefore, Plaintiff's declaratory judgment claim cannot be revived.

### CONCLUSION

For the reasons set forth herein and in the Motion and supporting documents, this Court should dismiss the Complaint in its entirety, with prejudice.

...

Dated: October 7, 2016

                                           Respectfully submitted,

| VINSON & ELKINS LLP | VINSON & ELKINS LLP |
|---|---|
| Michael C. Holmes* | |
| 2001 Ross Avenue, Suite 3700 | */s/ Ari M. Berman* |
| Dallas, Texas 75201 | Ari M. Berman |
| Telephone: (214) 220-7700 | Laurel S. Fensterstock |
| Facsimile: (214) 220-7716 | 666 Fifth Avenue, 26th Floor |
| *mholmes@velaw.com* | New York, New York 10103 |
| | Telephone: (212) 237-0000 |
| | Facsimile: (212) 237-0100 |
| | *aberman@velaw.com* |
| | *lfensterstock@velaw.com* |

*Counsel for Defendants Vanguard Natural Resources, LLC, VNR Finance Corp., Vanguard Natural Gas, LLC, VNR Holdings, LLC, Vanguard Permian, LLC, Encore Energy Partners Operating LLC, Encore Clear Fork Pipeline LLC, Vanguard Operating, LLC, Escambia Operating Co. LLC, Escambia Asset Co. LLC, Eagle Rock Upstream Development Company, Inc., Eagle Rock Upstream Development Company II, Inc., Eagle Rock Acquisition Partnership, L.P., Eagle Rock Acquisition Partnership II, L.P., Eagle Rock Energy Acquisition Co., Inc., and Eagle Rock Energy Acquisition Co., II, Inc.*

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 7, 2016, I served a true and accurate copy of the foregoing document on all counsel of record via filing the same with the Court's CM/ECF system.

                                           */s/ Ari M. Berman*
                                           Ari M. Berman